UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| METRON NUTRACEUTICALS, LLC, | ) Case No. 1:20-cv-01803 |
| Plaintiff, | ) Judge J. Philip Calabrese |
| v. | ) |
| CHRISTINA RAHM COOK, *et al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

All norms of civility and professionalism have broken down between certain parties to this lawsuit and their counsel. Plaintiff Metron Nutraceuticals, LLC asserts claims for the alleged theft of trade secrets, among other things, related to certain dietary supplements containing zeolite clinoptilolite fragments. But one would not know that from the record of this case. Despite conducting over a dozen status conferences, hearings, and other proceedings, many of them on the record, this case involves a seemingly endless parade of motions for contempt, sanctions, and discovery disputes. Based on the prior relationships and litigation between Dr. Nikolas Tsirikos-Karapanos, the owner and managing member of Metron Nutraceuticals, and Clayton Thomas and the entities affiliated with him and his wife, such conduct might be understandable. But it is not acceptable in a federal court. And counsel for these parties appear to prefer litigating such matters to the merits.

Plaintiff moves for civil contempt against Clayton Thomas—not for the first time—based on statements Mr. Thomas made on Facebook live and for retaining documents containing personal information of Dr. Tsirikos-Karapanos and his family. (ECF No. 141.) In addition, Plaintiff renews its motion for a preliminary injunction against Mr. Thomas.

Based on the record the parties presented on these issues, the Court exercises its discretion to decide the motion without an evidentiary hearing or oral argument. In the Court's view, and based on its experience with these parties and their counsel, a hearing or argument would be a waste of time. Based on this determination, the Court **DENIES AS MOOT** the motion to continue the hearing set for June 10, 2022. (ECF No. 143.)

## ANALYSIS

"A litigant may be held in contempt if his adversary shows by clear and convincing evidence that 'he [violated] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (quoting *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)). "A decision on a contempt petition is within the sound discretion of the trial court," and "the power 'to punish for contempts' should not be used lightly . . . ." *Electric Workers Pension Tr. Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 387 (6th Cir. 2003) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)); *see also In re Lane*, No. 20-5399, 2020 WL 9257958, at *2 (6th Cir.

Dec. 22, 2020) ("Contempt is a serious power and should be exercised with caution, using the least possible power adequate to the end proposed.") (quotation omitted). This discretion includes the power to frame sanctions so that they fit the violation in question. *Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 794 (N.D. Ohio 2005) (citing *Electric Workers Pension Tr. Fund*, 340 F.3d at 385).

### I. Civil Contempt

Plaintiff asserts that Mr. Thomas should be held in civil contempt for two separate reasons. First, Plaintiff argues that Mr. Thomas violated the Court's Order of May 5, 2021 by disparaging Dr. Tsirikos-Karapanos. Second, Plaintiff maintains that Mr. Thomas lied to the Court when he declared under penalty of perjury that he had only paper copies of limited portions of the tax returns of Dr. Tsirikos-Karapanos, which Root-Wellness produced in discovery in February 2022. The Court addresses each in turn.

#### I.A. Disparaging Remarks

On May 5, 2021, the Court entered an Order that enjoined Mr. Thomas from certain conduct during the pendency of this litigation. (ECF No. 89.) Among other things, the Court enjoined Mr. Thomas from "[m]aking any statements (except to his legal counsel, in depositions, or in pleadings or papers filed with the Court) that in any way disparage, reference, allude to, or pertain to Metron Nutraceuticals, Plaintiff's members, its products, Dr. Tsirikos-Karapanos, and/or anyone in Dr. Tsirikos-Karapanos's family[.]" (*Id.*, PageID #2816.) This Order resolved Plaintiff's motion for a preliminary injunction against Mr. Thomas. (ECF No. 85.) Among other things, that motion alleged that, in a Zoom call with a distributor for

3

Metron Nutraceuticals, Mr. Thomas threatened to disclose Dr. Tsirikos-Karapanos's social security number and made disparaging statements about him. (*Id.*, PageID #2728.) At the preliminary injunction hearing, the Court heard evidence about these statements (ECF No. 100, PageID #2891) and issued an oral ruling regarding disparagement (*id.*, PageID #2975), which was reduced to a separate Order as required under Rule 65 (ECF No. 89).

On April 1, 2022, Mr. Thomas went on Facebook live and said: "If you're watching this and your name is like Leister or Karapanos, you suck." (ECF No. 141, PageID #3411–12.) A video file of Mr. Thomas's Facebook live comments was provided to the Court and confirms these comments, which appear approximately two-and-a-half minutes into the video. Later, Mr. Thomas made statements about his wife, co-defendant Christina Rahm Cook:

> For all these haters that have already been cyberstalking Christina and they cyberstalk me because they're haters, and they're like, "We saw that you were doing a show called 'Under the Red Chandelier.'"
>
> She was in a deposition and she's like, "Yeah, I love art and fashion, and I'm a mom, and does it matter that I'm a scientist?" Can women not do what they want? These were guys that are a little bit gay, pedophiles, and just really bad people, and they didn't know what to say. I guess there's a lot of that in Ohio. There's some really good people in Ohio, I met some really good people in Ohio, but there's some really bad ones too.
>
> They'll probably wanna put this in front of the judge and the judge would go, "Yeah, you guys are bad people too."

(ECF No. 141, PageID #3412; ECF No. 142, PageID #3438–39; *see also* Video File at approximately 8:20.) Additionally, Mr. Thomas said that, at a job in 2015, he worked for a "psychopath[] . . . he claims to be a doctor . . . but he claims to be a doctor." (ECF

4

No. 141, PageID #3412; ECF No. 142, PageID #3439; *see also* Video File at approximately 10:26.) Notably, the record contains no evidence (directly or in the metadata of the video file) about whether anyone, other than Dr. Tsirikos-Karapanos, his counsel, and those participating in this case saw Mr. Thomas's Facebook live presentation.

With respect to these statements, the Court makes the following findings of fact and conclusions of law:

1.

Regarding the "you suck" statement, which specifically mentions Dr. Tsirikos-Karapanos, Mr. Thomas did not disparage Dr. Tsirikos-Karapanos. This statement is crude, perhaps offensive. But the facts and circumstances of this case, including the matters in Plaintiff's motion for preliminary injunction and presented at the hearing, show that Plaintiff's concern and the Court's Order primarily aimed at enjoining Mr. Thomas from acting in the market to harm Metron Nutraceuticals or Dr. Tsirikos-Karapanos or his family. Indeed, under the law, disparagement generally means "[t]o unjustly discredit or detract from the reputation of (another's property, product, or business)." Black's Law Dictionary (7th ed. 1999). This statement does not do that.

However, the statement does violate the letter of the Court's Order. The Court enjoined Mr. Thomas against "[m]aking any statements . . . that in any way . . . reference, allude to, or pertain to . . . Dr. Tsirikos-Karapanos." (ECF No. 89, PageID #2816.) In this regard, the Court now appreciates that its Order goes too far. One would have thought that Plaintiff's counsel would have appreciated that a

statement like this that might technically violate the Order would not support such a serious motion. *See In re Lane*, 2020 WL 9257958, at *2. Like their client, however, Plaintiff's counsel have abandoned reason and a constructive approach to resolving any good-faith disputes over the merits in favor of litigation tactics that claw and scrape for any advantage, regardless of the cost. By separate entry, the Court will amend its prior Order to make clear that Mr. Thomas is enjoined from disparaging or talking about Metron Nutraceuticals, its members, and products and from disparaging Dr. Tsirikos-Karapanos or any member of his family. Although Mr. Thomas may say things about Dr. Tsirikos-Karapanos like "you suck," he would be wise not to do so. Based on past experience with Mr. Thomas, the Court harbors grave doubts that Mr. Thomas can or will heed this advice.

2.

Mr. Thomas identified "these guys" as "haters" who "are a little bit gay, pedophiles, and just really bad people." Such statements appear defamatory and might even amount to defamation *per se*. But this case and Plaintiff's motion do not involve claims for defamation. Instead, Plaintiff's motion seeks a finding of contempt, which requires clear and convincing evidence of a violation of a definite and specific order. *Gary's Elec. Serv. Co.*, 340 F.3d at 379. In context, Mr. Thomas directed his statement to Plaintiff's counsel, not to Dr. Tsirikos-Karapanos—at least, the record does not present clear and convincing evidence that Mr. Thomas intended to describe Dr. Tsirikos-Karapanos with this language. Contrary to Plaintiff's claim, the Court's Order of May 5, 2021 did not enjoin Mr. Thomas from using such language to describe counsel. A motion for contempt requires a definite and specific order, and the Court's

Order does not mention counsel or agents of Metron Nutraceuticals. Therefore, Plaintiff has not carried its burden of showing contempt through these comments, as uncivil, vile, and reprehensible as they are.

3.

Finally, at the outset of his Facebook live session, Mr. Thomas directed his "you suck" remark to "Karapanos." Later, he discussed working in 2015 for a "psychopath" who "claims to be a doctor." Although counsel for Mr. Thomas argues that the record does not establish that the doctor is Dr. Tsirikos-Karapanos (ECF No. 142, PageID #3440), that argument has no merit. Plainly, the statement refers to Dr. Tsirikos-Karapanos. In this regard, Mr. Thomas's statement violates the Court's Order of May 5, 2021. But only someone familiar with Mr. Thomas's work history or Dr. Tsirikos-Karapanos's background would make that connection.

Further, disparagement requires discrediting or detracting from another's reputation, and the record contains no evidence that anyone (other than the parties or those reading this Order) have seen the video or know of its existence. Put another way, if Mr. Thomas badmouthed Dr. Tsirikos-Karapanos in the privacy of his home, as he likely does daily, such comments might technically violate the Court's Order, but do not constitute contempt. Plaintiff must at least provide evidence tying the disparaging remarks to reputational harm. The record contains no such evidence. For each of these reasons, Plaintiff has failed to carry its burden of establishing contempt.

7

### I.B. Retention of Documents

In its motion for a preliminary injunction, Plaintiff argued that Mr. Thomas threatened to disclose the social security numbers of Dr. Tsirikos-Karapanos and his wife and offered to disclose their tax returns to a third party. (ECF No. 85, PageID #2726.) In opposition to the motion, Mr. Thomas provided a declaration under penalty of perjury that Dr. Tsirikos-Karapanos provided him with the first page of his personal income tax returns for the 2012 and 2013 tax years. (ECF No. 86-1, ¶ 4, PageID #2802–03.) Mr. Thomas provided paper copies of his "2012 and 2013 tax returns and the first page of Dr. Tsirikos-Karapanos' 2012 federal income tax return to . . . prospective investors." (*Id.*, PageID #2803.) Mr. Thomas declared that he retained three photocopies of the first page of the 2012 federal income tax return of Dr. Tsirikos-Karapanos, but no digital copies. (*Id.*) Mr. Thomas also declared that he turned those paper copies over to his counsel and did "not retain any copies." (*Id.*) Finally, he declared that he had no electronic devices storing any personal information of Dr. Tsirikos-Karapanos or his family. (*Id.*, ¶ 5.)

At the evidentiary hearing on the motion, the parties presented considerable evidence and argument about those tax returns, how Mr. Thomas might have acquired them, and whether he offered to disclose them to a distributor of Metron Nutraceuticals. (*See, e.g.*, ECF No. 100, PageID #2881, #2893–96, #2920–21, #2951, #2954–55 & #2968–73.) Following the hearing, the Court enjoined Mr. Thomas from "[d]isclosing the personal financial information of Dr. Tsirikos-Karapanos or his family, including social security numbers." (ECF No. 89, ¶ 3, PageID #2816.)

8

In February 2022, Root Wellness made a supplemental document production through a Dropbox link. (ECF No. 141, PageID #3421.) That link contained: (1) the 2012 federal income tax return of Dr. Tsirikos-Karapanos and his wife; (2) a duplicate copy of that return; and (3) the 2013 federal income tax return of Dr. Tsirikos-Karapanos and his wife. (*Id.*, ¶ 5, PageID #3419–20.) At a deposition, Mr. Thomas testified about this document production. (*Id.*, PageID #3430.) That testimony contains the following exchange with Plaintiff's counsel:

> Q. And you shared that with the attorneys in this case and the parties in this case unredacted?
>
> A. As requested, because they were on paper.
>
> Q. And you provided those in electronic form?
>
> A. There were requested to be in—in a transmittable form. So they were scanned and sent to the attorneys because the only copies were on paper.

(*Id.*, PageID #3432–33.)

### I.B.1. Document Production

Based on the production in discovery of the personal income tax returns of Dr. Tsirikos-Karapanos, Plaintiff maintains that Mr. Thomas violated the Court's Order of May 5, 2021 (ECF No. 89.) That production, Plaintiff argues, disclosed the personal information of Dr. Tsirikos-Karapanos and his family. (ECF No. 141, PageID #3411.) This argument borders on the frivolous. As Plaintiff's counsel knows, Mr. Thomas has obligations in discovery. By complying with those obligations, Mr. Thomas does not violate the Court's Order or act contemptuously.

In fairness, Plaintiff's position is somewhat more nuanced than that—but still fails. Plaintiff argues that by disclosing the documents to Root Wellness, which provided the documents at issue in discovery, Mr. Thomas violated the Court's Order enjoining disclosure of Dr. Tsirikos-Karapanos's personal information. This argument overlooks two facts in the record. First, according to Plaintiff's own allegations, Mr. Thomas controls Root Wellness. (*See, e.g.*, ECF No. 3, ¶¶ 32 & 36, PageID #98.) Second, counsel for Root Wellness formerly represented Mr. Thomas in this litigation before Mr. Thomas secured separate counsel. (*See, e.g.*, ECF No. 130; Order of March 28, 2022.)

On this record, Plaintiff has failed to carry its burden by clear and convincing evidence that Mr. Thomas violated the Court's Order by disclosing the tax returns of Dr. Tsirikos-Karapanos and his wife to Root Wellness, which then produced them in discovery. The record provides an equally plausible explanation for the production—Mr. Thomas provided these documents to his counsel, as represented in connection with the preliminary injunction proceedings, who then turned them over to successor counsel, who retained them in connection with his representation of Root Wellness, even after Mr. Thomas retained a third lawyer. Plaintiff complains that Mr. Thomas did not provide evidence to support such a theory. (ECF No. 144, PageID #3448.) But Plaintiff bears a heavy burden of establishing contempt, a serious power that should be exercised with caution for the most serious of violations, by clear and convincing evidence. Plaintiff presents no evidence, particularly on the facts and circumstances

10

of this case and the close relationship between Mr. Thomas and Root Wellness, of a contemptuous violation of an Order.

### I.B.2. Perjury and Misrepresentations to the Court

Based on this production, Plaintiff also alleges that Mr. Thomas committed perjury or made misrepresentations to the Court in the declaration he provided in opposition to Plaintiff's motion for preliminary injunction (ECF No. 86-1) by swearing under oath that he no longer possessed the documents containing personal information of Dr. Tsirikos-Karapanos and his family. (ECF No. 141, PageID #3410–11.) In particular, Plaintiff argues that, contrary to Mr. Thomas's sworn declaration, "[a]s it turns out, [he] did retain electronic copies of the sensitive financial documents[.]" (ECF No. 141, PageID #3411.) To make this argument, Plaintiff omits from its argument Mr. Thomas's testimony that the documents existed in paper, consistent with his declaration (ECF No. 86-1, ¶ 4, PageID #2803), and they were digitized to produce in discovery (ECF No. 141, PageID #3432–33). Indeed, Mr. Thomas confirmed in his deposition that, before digitizing the tax returns for production, "the only copies were on paper." (*Id.*, PageID #3433.)

In reply, Plaintiff attacks the consistency of Mr. Thomas's declaration from the preliminary injunction proceedings and the record now. (ECF No. 144, PageID 3448.) Again, Plaintiff bases this argument—to the extent it is even proper to raise it for the first time in reply—on misrepresentations of the record. Upon close examination, Mr. Thomas's declaration, particularly the portions of it on which Plaintiff relies, is carefully drafted. It does not sweep as broadly as Plaintiff believes or claims. His declaration is limited to the first page of Dr. Tsirikos-Karapanos's 2012 tax return.

11

(ECF No. 86-1, ¶ 4, PageID #2802–03.) When Plaintiff cross-examined Mr. Thomas at the preliminary injunction hearing, he did not elicit further information about whether Mr. Thomas possessed more than the first page of the 2012 personal tax return of Dr. Tsirikos-Karapanos and his wife. (*See* ECF No. 100, PageID #2893–96.) At times, Plaintiff affirmatively directed his questions away from the tax returns. (*Id.*, PageID #2895.)

In short, Plaintiff argues that "Mr. Thomas kept electronic copies of sensitive financial documents that he swore to this Court he either never possessed and/or possessed only in paper form." (ECF No. 144, PageID #3448–49.) But the record does not contain such a sweeping statement Mr. Thomas made, either in his declaration or testimony. In fairness, Mr. Thomas parses his words carefully and, perhaps, sought to create the impression Plaintiff suggests. Indeed, the Court believes Mr. Thomas intended to mislead Plaintiff. But Plaintiff has had a year to conduct discovery and at least two occasions to examine Mr. Thomas under oath on these points and failed to develop clear and convincing evidence that his declaration was false. Although the Court strongly condemns such conduct, Plaintiff itself cherry picks the record and plays almost as fast and loose with the facts and the record as Mr. Thomas. Under such circumstances, if either party is in contempt, both are. But the Court will exercise its discretion to restrain the use of its contempt power in this instance, consistent with the governing legal standard cautioning against its use.

## II.     Renewed Motion for Preliminary Injunction

Plaintiff renews its motion for a preliminary injunction. Specifically, Plaintiff seeks to identify sources in the possession of Mr. Thomas and Root Wellness that

might contain the personal information of Dr. Tsirikos-Karapanos or any member of his family. (ECF No. 141, PageID #3416–17.) The Court denies this request for two reasons. First, although Plaintiff has understandable concerns about protecting against the disclosure of the social security numbers and other sensitive personal information of Dr. Tsirikos-Karapanos and his family, the record shows that Mr. Thomas has not disclosed that information except in discovery in this case. Further, the Court's Orders against disclosure remain in full force and effect.

Second, discovery has closed. (ECF No. 119.) Both in its Civil Standing Order and in various status conferences the Court advised the parties that it would not reopen discovery or referee discovery fights following the close of discovery. (*See, e.g.*, Order, Mar. 4, 2022.) If Plaintiff wanted discovery of the information it now seeks, it had ample time to pursue it in discovery, and to enlist the aid of the Court in doing so. Moreover, having briefed and argued these issues in preliminary injunction proceedings, Plaintiff knew to direct discovery to these issues. For these reasons, the Court declines to reopen preliminary injunction proceedings at this late date.

## CONCLUSION

The Court has repeatedly made known to the parties that it will not resolve this dispute through motions for sanctions or matters collateral to the merits. In the Court's view, Plaintiff's motion is an effort to prevail in litigation through such means. The Court remains deeply troubled by the conduct of Mr. Thomas and of Metron Nutraceuticals and its counsel.

For the forgoing reasons, the Court **DENIES** Plaintiff's motion for civil contempt and renewed motion for preliminary injunction. (ECF No. 141.) Based on this determination, the Court **DENIES AS MOOT** the motion to continue the hearing set for June 10, 2022. (ECF No. 143.) Further, the Court **CANCELS** that hearing.

**SO ORDERED.**

Dated: May 23, 2022

　　　　　　　　　　　　　　　　　　　／s／ J. Philip Calabrese
　　　　　　　　　　　　　　　　　　　J. Philip Calabrese
　　　　　　　　　　　　　　　　　　　United States District Judge
　　　　　　　　　　　　　　　　　　　Northern District of Ohio