UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| METRON NUTRACEUTICALS, LLC, | Case No. 1:20-cv-01803 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | |
| MARK E. ADAMS, | |
| ENTOX SOLUTIONS, LLC, | |
| TOP MANAGEMENT PARTNERS, LLC, | |
| Defendants. | |

## OPINION AND ORDER

On July 18, 2023, the Court entered a summary judgment on Plaintiff Metron Nutraceuticals, LLC's claims of trade secret misappropriation and breach of contract against all Defendants. (ECF No. 171.) Certain of those Defendants, Movants Mark Adams, Top Partners Management, LLC, and EnTox Solutions, LLC ask for an award of attorneys' fees and costs for their defense against Plaintiff's claims. (ECF No. 174.) For the reasons that follow, the Court **DENIES** the motion. Further, the Court **DENIES** Plaintiff's motion for leave to file a surreply (ECF No. 179) as unnecessary and unhelpful, making Movants' motion to strike moot. (ECF No. 180).

### STATEMENT OF THE CASE

In its summary judgment ruling, the Court detailed the factual and procedural background of this case. (ECF No. 171, PageID #7218–50.) In short, as relevant for

present purposes, Plaintiff brought seven claims against some or all of thirteen Defendants. (ECF No. 3.) But after extensive discovery, in its brief in opposition to summary judgment, Plaintiff decided to abandon several claims and effectively to dismiss certain parties. (ECF No. 168, PageID #7178.) The Court dismissed those claims and parties with prejudice. (ECF No. 171, PageID #7249.) Plaintiff maintained its claims that Defendants misappropriated its trade secrets and, in doing so, breached their respective confidentiality agreements. (*See* ECF No. 171, PageID #7245–46.) The Court determined that "Plaintiff cannot prove the existence of a trade secret" and that "the Ohio Uniform Trade Secrets Act preempts Plaintiff's breach of contract claim." (*Id.*, PageID #7258 & #7268.) Accordingly, the Court entered summary judgment for Defendants, "dispos[ing] of all pending claims before the Court." (*Id.*, PageID #7269.)

Movants now seek to recover over $400,000 in attorneys' fees and costs incurred defending against Plaintiff's claims. (ECF No. 174, PageID #7274.) Specifically, Movants seek $392,357 in attorneys' fees and $10,996.27 in costs. Movants contend that the Court has both statutory and inherent authority to award fees because Plaintiff litigated this case in bad faith. (ECF No. 175.) Plaintiff opposes the motion. (ECF No. 177.)

After the close of briefing, Plaintiff moved for leave to file a surreply. (ECF No. 179.) The parties disagree on both "the law and facts" at issue, and Plaintiff would like the last word. (*Id.*, PageID #7357.) But neither the Federal Rules of Civil Procedure nor this district's Local Rules "expressly permit the filing of surreplies," so

whether to grant leave to file such a brief lies within the discretion of the Court. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264–65 (6th Cir. 2014); *see also* Local Rule 7.1. The Court will grant leave to file a surreply "rarely and only for good cause." *See* Standing Order on Civil Procedures § 9.D. Because Movants "presented no new evidence or arguments in [their] reply brief necessitating response," *Key* at 265, the Court finds no good cause to grant Plaintiff leave to file a surreply. Nor does this routine motion constitute the rare circumstance in which a surreply might be appropriate. Accordingly, the Court **DENIES** Plaintiff's motion and gives it *no* consideration in the disposition of this motion. (ECF No. 179, PageID #7358–7363.)

In response to Plaintiff's effort to file a surreply, Movants opposed and moved to strike. (ECF No. 180.) Based on the Court's denial of leave to file the surreply and because the proffered surreply receives no consideration in the resolution of this motion, the Court treats Movants' opposition the same. Further, the Court **DENIES AS MOOT** the motion to strike.

## ANALYSIS

Movants' request for fees runs counter to the American Rule, which "generally require[s] parties to pay their own" legal fees. *Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 336 (6th Cir. 2022). In certain circumstances, however, the law and improper conduct may displace the American Rule. Movants seek attorney's fees under both the Ohio Uniform Trade Secrets Act and the Court's inherent authority. "The party seeking attorney's fees bears the burden of

3

establishing entitlement to an award." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (citation and internal quotation marks omitted).

The Ohio Uniform Trade Secrets Act provides that a "court may award reasonable attorney's fees to the prevailing party, if . . . [a] claim of misappropriation is made in bad faith." Ohio Rev. Code § 1333.64(A); *Phoenix Lighting Grp., LLC v. Genlyte Thomas Grp., LLC*, 160 Ohio St. 3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 25. The Ohio Supreme Court has not elaborated on the Act's bad-faith standard. Other areas of Ohio law that tie an award of fees to bad-faith conduct require "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive[,] or ill will partaking of the nature of fraud." *State ex rel. Summers v. Fox*, 164 Ohio St. 3d 583, 2021-Ohio-2061, 174 N.E.3d 747, ¶ 18 (per curiam) (citation omitted) (applying the Ohio Public Records Act, Ohio Rev. Code § 149.43(C)(3)(b)(iii)). In a persuasive, unpublished opinion, the Sixth Circuit suggested that the test for bad faith under the Act has both "objective and subjective prongs." *Magnesium Mach., LLC v. Terves, LLC*, No. 20-3779, 2021 WL 5772533, at *5 (6th Cir. Dec. 6, 2021) (citing *American Chem. Soc'y v. Leadscope, Inc.*, 2010-Ohio-2725, ¶ 84 (Ohio Ct. App.)).

Separately, Movants invoke the Court's "inherent authority to award fees when a party litigates 'in bad faith.'" *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997). But the "mere fact that an action is without merit does not amount to bad faith." *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010) (citation omitted). To shift fees using its inherent authority, the

4

Court "must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose.'" *Big Yank*, 125 F.3d at 313 (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)). Examples of "conduct that will support a finding of bad faith or improper purpose" include "[h]arassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts." *BDT Prods.*, 602 F.3d at 754. Indeed, in *Magnesium Machine*, the court equated bad faith under the Act to the standard for "sanctions imposed under a court's inherent authority." 2021 WL 5772533, at *5. Under this standard, a court will "order a party to pay attorney's fees if the party engages in conduct that abuses the judicial system." *Wesco Ins.*, 39 F.4th at 337. But absent a showing of bad faith or abuse of process, "each party pays its own attorney fees." *Doe v. Univ. of Michigan*, No. 22-1654, 2023 WL 5346021, at *14 (6th Cir. Aug. 21, 2023).

Therefore, under either the Ohio Uniform Trade Secrets Act or the Court's inherent authority, attorneys' fees are available only if Movants can show that Plaintiff acted in bad faith to such a degree that it knowingly advanced meritless claims for an improper purpose.

I.   **Attorneys' Fees**

Movants argue that Plaintiff acted in bad faith by bringing meritless claims, refusing to dismiss those claims, withholding evidence, and filing frivolous motions for the purpose of delay. (ECF No. 175, PageID #7285.) At bottom, Movants develop two arguments focused on Plaintiff's claimed refusal to dismiss certain claims sooner

5

and on the claims Plaintiff maintained to summary judgment. (ECF No. 175, PageID #7286–87 & #7287–88; ECF No. 178, PageID #7347–49.)

### I.A. Voluntarily Dismissed Claims

Movants seek fees for defending against the claims Plaintiff eventually dismissed voluntarily. Plaintiff's amended complaint asserted seven claims or requests for relief: (1) misappropriation of trade secrets, (2) mandatory injunction, (3) breach of contract, (4) tortious interference, (5) fraudulent misrepresentation, (6) piercing the corporate veil, and (7) preliminary injunction. (ECF No. 3.) After the pleading stage, the parties exchanged discovery on all claims from early 2021 to August 2022. (*See* ECF No. 119.) Early in that process, Movants urged Plaintiff to dismiss its claims that Movants used or profited from Plaintiff's trade secrets because the written discovery failed to support those allegations. (ECF No. 175, PageID #7286.) In email correspondence that is part of the record, noting that "discovery has not yielded any evidence supporting the claims against [Movants]," Movants' counsel asked Plaintiff "to voluntarily dismiss the claims . . . before they incur the expense of further litigation." (ECF No. 175-1, PageID #7305.)

Plaintiff did not dismiss its claims at that time. Movants "expended significant effort and expense" in responsive pleadings, discovery, and a 58-page summary judgment motion to defend against Plaintiff's claims. (ECF No. 171, PageID #7249; *see also* ECF No. 175, PageID #7290–91.) After discovery, Defendants jointly moved for summary judgment on all claims. (ECF No. 159.) With little explanation, Plaintiff used its opposition to dismiss certain claims and parties. (ECF No. 168, PageID #7178.) As related to Movants, Plaintiff dismissed its request for a mandatory

6

injunction, tortious interference claim, claim for breach of contract against EnTox Solutions, and its fraud claim against Mr. Adams. (*Id.*) But this action came in November 2022, some 19 months after Movants first requested dismissal.

### I.A.1. Counsel's Email

Movants argue that Metron's delayed dismissal of certain claims justifies an award of fees. To overcome the American Rule, Movants must show that Plaintiff preserved these claims until its summary judgment brief for an "improper purpose," the third requirement for a court to invoke its inherent authority. *Big Yank*, 125 F.3d at 313. The record does not support such a showing. Movants emphasize an email between counsel urging Plaintiff to dismiss its claims voluntarily. (ECF No. 175-1, PageID #7305.) That correspondence occurred following paper discovery but before Plaintiff took depositions. (*Id.*) Even then, because of the facts and circumstances of this case, which from Plaintiff's perspective involved suspicious circumstances involving overlapping relationships among principals who might have possessed or misappropriated trade secrets or confidential information, Plaintiff had a good-faith basis to conduct additional discovery. Indeed, with the benefit of discovery, Plaintiff showed a connection between the alleged misappropriation and each of Mr. Adams, EnTox Solutions, and Top Partners Management. (ECF No. 177, PageID #7328 (citing ECF No. 156-2, PageID #5732 for Mr. Adams; ECF No. 155-2, PageID #4174 for EnTox; *Id.*, PageID #4191 for Top Partners).)

Moreover, after the close of discovery Plaintiff *did* voluntarily dismiss certain claims and parties and litigated only the claims it intended to bring to trial. On this record, the Court cannot say that Plaintiff's conduct meets the high standard the law

7

sets for deviating from the American Rule, though one can understand why Movants feel otherwise. *See BDT Prods.*, 602 F.3d at 754.

### I.A.2. Affidavits

Movants argue that two affidavits in the record support an inference of improper conduct. First, the affidavit of the founder of Metron Nutraceuticals, Dr. Nikoloas Tsirikos-Karapanos attested that the company did not realize profits from a 2015 distribution agreement because Movants used "a knock-off patent" to misappropriate his intellectual property. (ECF No. 175, PageID #7286 (referencing ECF No. 165-2, ¶¶ 7 & 19, PageID #7060 & #7062).) Movants claim that the affidavit contained known falsehoods—namely, that at the time of this sworn statement, in 2022, Dr. Tsirikos-Karapanos knew that the company's distribution agreement had terminated. (ECF No. 175, PageID #7287; ECF No. 178, PageID #7349.) But Movants miss the mark because the affidavit focuses on a seven-month period in 2015 and 2016, not the time of the affidavit's execution. (ECF No. 165-2, ¶¶ 7 & 9, PageID #7060.)

Second, Movants highlight that the affidavit of Denise Stephens, the chief executive officer of the distributor for Metron Nutraceuticals in 2020, states that Defendants Clayton Thomas and Christina Cook "market and sell a zeolite product." (ECF No. 175, PageID #7287 (referencing ECF No. 166-1, ¶ 14, PageID #7066).) Movants' point is that, after two years of litigation, Plaintiff "acknowledged[] for the first time" that Mr. Thomas and Ms. Cook—not Movants—are the parties against whom Plaintiff should direct its allegations and claims. (*Id.*) To the extent this tack has any merit, Movants' ties to Mr. Thomas and Ms. Cook, which the Court's

summary judgment ruling details (ECF No. 171, PageID #7227–34), presents a tangled fact pattern that Plaintiff was entitled to investigate through discovery. Nor does Plaintiff's apparent conclusion that it could not carry its burden on summary judgment on certain claims against certain parties establish that it undertook this discovery in bad faith. The record does not establish, for example, that Plaintiff *knew* its claims were meritless but pursued them through discovery to harass Movants or impose burdens or costs—a sanctionable strategy. Again, though one can understand why Movants feel otherwise, the record does not show conduct on the part of Plaintiff that rises to the level necessary to support an award of attorneys' fees.

### I.B.  Summary Judgment Claims

Nor are Movants entitled to fee-shifting on the two claims Plaintiff litigated against them through summary judgment, trade secret misappropriation and breach of contract. Although the Court ultimately granted summary judgment in Movants' favor (ECF No. 171, PageID #7269), there is no reason Plaintiff should have known its claims would fail, *Big Yank*, 125 F.3d at 313. Although the Court held that the Ohio Uniform Trade Secrets Act preempted the claim for breach of contract (ECF No. 171, PageID #7255), the "Ohio Supreme Court has not yet defined the scope of that statute's preemption," and Plaintiff advanced a colorable, non-frivolous argument against that conclusion. (*Id.*, PageID #7253.) Plaintiff's claim for misappropriation of trade secrets failed because the generally known information at issue "d[id] not qualify as a trade secret." (*Id.*, PageID #7266.) But Metron had no reason to know from the outset of the case that its dietary supplement formula did not constitute a trade secret. That determination necessarily required factual

9

development through discovery, at least on this record, and "careful consideration of the record presented." (*Id.*)

Plaintiff did not bring its misappropriation and breach-of-contract claims for an improper purpose or in bad faith. The claims "fail[ed] on the[ir] legal merits." (*Id.*, PageID #7266.) But that hardly makes either one the type of rare, "truly egregious" claim that overcomes the American Rule. *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). To be sure, Plaintiff litigated aggressively. But the Court cannot find, as Movants argue, that counsel knew the claims were "clearly meritless" but still attempted "to force a result that it could not obtain under the applicable law." *BDT Prods.*, 602 F.3d at 753 (citation omitted). Accordingly, neither the fee-shifting provision of Ohio's Uniform Trade Secrets Act nor the Court's inherent authority provides a basis to depart from the usual rule that each party bears its own attorneys' fees.

**II.    Costs**

Movants also seek to recover nearly $11,000 in court costs. Rule 54 states that costs generally "should be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), but the decision to award costs is ultimately discretionary, *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). The Court "may tax as costs" clerk and marshal's fees, transcript fees, docket fees, and other categories of expenses. 28 U.S.C. § 1920. The party seeking recovery must file a bill of costs itemizing the amount due, which the Court may then review. Fed. R. Civ. P. 54(d)(1).

10

Movants have not filed a bill of costs. (*See* ECF No. 175, PageID #7298.) Accordingly, the Court has no occasion to consider costs further.

## CONCLUSION

For all the foregoing reason, the Court **DENIES** Movants' motion **WITH PREJUDICE** as to attorneys' fees and **WITHOUT PREJUDICE** as to costs. (ECF No. 175.)

**SO ORDERED.**

Dated: September 19, 2023

J. Philip Calabrese
United States District Judge
Northern District of Ohio

11