IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, CLEVELAND, OHIO

| | |
|---|---|
| METRON NUTRACEUTICALS, LLC | Case No. 20-cv-01803 |
| Plaintiff, | |
| | Judge J. Philip Calabrese |
| v. | |
| CHRISTINA RAHM COOK, et al. | |
| Defendants. | |

**Christina Rahm Cook's Consolidated Motions *in Limine***

Defendant Christina Rahm Cook ("Cook"), through counsel, pursuant to the Court's pretrial order of October 9, 2024, submits the following motions to exclude certain evidence and testimony at trial. As set forth herein, Cook respectfully asks this Court to preclude presentation of evidence at trial regarding (1) the individual Defendants' romantic relationships; (2) other unrelated litigation in which Cook is or has been a party, including details of any settlements reached in such litigation; and (3) the opinions of Dr. Kent Grayson, one of Plaintiff's experts on damages. [1]

1. **The Court should exclude evidence at trial regarding the individual Defendants' romantic relationships.**

First, Plaintiff should not be permitted to present evidence regarding the individual Defendants' romantic relationships, as this would be irrelevant to all claims at

---

[1] Defendant Cook also joins the motion *in limine* made by the Adams Defendants to the extent that motion seeks to prohibit Plaintiff from referring to any combination of individual Defendants as "the Defendants" at trial as if they jointly and equally participated in any behavior resulting in liability.

1

issue, substantially more prejudicial than probative, and would needlessly risk confusing the issues and misleading the jury. *See* Fed. R. Evid. 402 and 403.

For example, Plaintiff's counsel has repeatedly inquired about and elicited deposition testimony about Defendant Christina Rahm Cook's romantic relationship or marriage to Defendant Clayton Thomas. (*See* Doc. No. 156-2, Christina Cook Dep. at 10:19-11:24 (PageID 5429-30); Doc. No. 155-3, Clayton Thomas Dep. at 46:14-47:2 (PageID 4512-13) and 167:18-168:4 (PageID 4633-34); Doc. No. 155-2, Mark Adams Dep. at 39:2-6 (PageID 4155) and 201:16-18 (PageID 4317).) This has included Plaintiff's counsel and Dr. Tsirikos-Karapanos gratuitously characterizing Cook as Clayton Thomas's "girlfriend and lover," or calling them "boyfriend and girlfriend."(*See* Doc. No. 155-3, Thomas Dep. at 114:7-9 (PageID 4580); Doc. No. 156-1, Tsirikos-Karapanos Dep., PageID Part 1 at 154:1-10 (PageID 4995), 160:21-23 (PageID 5001), and 238:23-25 (PageID 5079).) In scrutinizing Cook and Thomas's prior romantic history, Plaintiff has also inquired into Thomas's previous marriage (Doc. No. 155-3, Thomas Dep. at 166:14-167:17 (PageID 4632-33) and sought to imply that he cheated on his ex-wife with Cook. (Doc. No. 156-1, Tsirikos-Karapanos Dep., Part 1 at 153:22-154:5 (PageID 4994-95).)

Evidence is only relevant if it tends to make a fact that is material to the case more or less likely than it would be without the evidence. Fed. R. Evid. 401. Irrelevant evidence is never admissible. Fed. R. Evid. 402. However, even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. "Unfair prejudice" occurs from creating "an undue tendency" for jurors to make a decision on "an improper basis, commonly, though not necessarily, an emotional one." *See, e.g.*, *McDole v. City of Saginaw*, 471 Fed. Appx. 464, 471-72 (6th Cir. 2012). Thus, courts must weigh any

2

probative value that exists against, among other things, the evidence's unfairly prejudicial effect. *See, e.g.*, *United States v. Sims*, 708 F.3d 832, 834-35 (6th Cir. 2013).

Here, the material issues at trial involve whether Defendants breached a nondisclosure agreement or misappropriated Plaintiff's trade secrets, and whether Plaintiff suffered compensable damages as a result.

The individual Defendants' romantic relationships have no relevant bearing on any of these issues. Whether or not Cook and Thomas are romantically involved and any details about Thomas's previous marriage are irrelevant to any claimed breach of contract, use of trade secrets, or issues of damages and causation. Even if these issues *were* somehow relevant to this case (which they are not), any probative value would be substantially outweighed by the risk of unfair prejudice and confusing or misleading a jury. Convincing a jury that Cook and Thomas were or were not dating or married at any point, or that they were involved in an extramarital affair, could serve no possible purpose other than to besmirch their character, inflame passions, and elicit unfair personal animus against them.

Therefore, the Court should preclude Plaintiff from presenting evidence or testimony at trial regarding Defendants' romantic relationships, Cook's romantic or marriage history with Clayton Thomas, or claims of past extramarital affairs.

2. **The Court should exclude evidence at trial regarding any separate litigation involving Christina Rahm Cook as a party.**

Next, Plaintiff should not be permitted to present evidence about Cook's involvement in other litigation, as this would be substantially more prejudicial than probative, irrelevant to the claims at issue, and would needlessly risk confusing the issues and misleading the jury. *See* Fed. R. Evid. 402 and 403.

3

Plaintiff has elicited deposition testimony that Cook once sued and obtained a settlement against the non-party entity Root Wellness and Thomas related to an internal business dispute and breach of a contract unrelated to the material issues in this case. (*See* Doc. No. 156-2, Cook Dep. at 137:4-138:7 (PageID 5556-57) and 143:23-145:22 (5562-64); Doc. No. 155-3, Thomas Dep. at 110:1-114:21 (PageID 4576-80).) In addition, Plaintiff's counsel has inquired at deposition about other unrelated litigation in which Cook is a named defendant. (*See* Doc. No. 156-2, Cook Dep. at 290:13-293:7 (PageID 5709-12).)

Evidence is only relevant if it tends to make a fact that is material to the case more or less likely than it would be without the evidence. Fed. R. Evid. 401. Irrelevant evidence is never admissible. Fed. R. Evid. 402. However, even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. "Unfair prejudice" occurs from creating "an undue tendency" for jurors to make a decision on "an improper basis, commonly, though not necessarily, an emotional one." *See, e.g.*, *McDole v. City of Saginaw*, 471 Fed. Appx. 464, 471-72 (6th Cir. 2012). Thus, courts must weigh any probative value that exists against, among other things, the evidence's unfairly prejudicial effect. *See, e.g.*, *United States v. Sims*, 708 F.3d 832, 834-35 (6th Cir. 2013).

Here, the material issues at trial involve whether Defendants breached a nondisclosure agreement or misappropriated Plaintiff's trade secrets, and whether Plaintiff suffered compensable damages as a result.

Informing a jury that Cook previously sued Thomas and non-party entity Root Wellness on an unrelated contractual matter (including details of the proceedings and terms of the resulting settlement or consent decree) would have no relevant bearing on

4

whether any Defendant breached a separate agreement with Metron, misappropriated any trade secret, or otherwise damaged Plaintiff in this case. Instead, such a discussion would only portray Defendants as a fractious and litigious group of individuals prone to conflict, misdirect attention to relitigating irrelevant issues from the past, and risk unfair prejudice against Cook and her fellow Defendants. *See, e.g.*, *Ross v. Am. Red Cross*, 567 Fed. Appx. 296, 307-309 (6th Cir. 2014) (affirming district court's decision to exclude evidence of prior lawsuits and terms of a Consent Decree in separate proceeding, as it could "force the parties to explain and relitigate old issues that have, at best, minimal relevance to the present case" and any probative value "is substantially outweighed by the risk that the jury will draw improper conclusions from other incidents in which the Red Cross's actions allegedly caused injuries"). By the same token, there is no legitimate, relevant purpose for admitting evidence of any other case (ongoing or otherwise) in which Cook is a Defendant; learning that other lawsuits exist against Cook without understanding the issues and evidence involved would only risk creating unfair prejudice and bias, causing jurors to infer that Cook has some kind of "track record" of improper behavior in business. No such separate proceedings could possibly be relevant for any permissible purpose here; they certainly could not be used to establish bad character or prior wrongful acts to prove liability in this case, which is expressly prohibited by Fed. R. Evid. 404(a) and (b). With no probative value to offer, coupled with the substantial risk of undue prejudice and confusion, there is no legitimate basis to allow evidence of these separate proceedings at trial.

Therefore, the Court should preclude Plaintiff from presenting evidence or testimony at trial regarding Cook's past suit against Thomas and Root Wellness, the settlement terms resulting therefrom, or any other separate litigation involving Cook.

5

3. **The Court should exclude the testimony of Plaintiff's expert Dr. Kent Grayson under Fed. R. Evid. 702, 402, and 403.**

Plaintiff should not be permitted to offer the opinion testimony of Dr. Kent Grayson for two reasons. First, Dr. Grayson's opinions, knowledge, and experience will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Second, even if the Court were otherwise inclined to believe that Dr. Grayson's testimony *could* assist the jury in understanding the evidence or determining a factual issue, the Court should still prohibit his testimony because its tendency toward "confusing the issues" or "misleading the jury" substantially outweighs any probative value. *See* Fed. R. Evid. 402 and 403.

Plaintiff attempts to offer Dr. Grayson as one of its experts on damages, opining that the label of "patent-pending" or "proprietary" benefitted sales of the product Clean Slate to some degree, *but* that the extent of any such benefit cannot be quantified in any way. (*See* Doc. No. 197-1, Grayson Dep. at 46:1-11 (PageID 7564).)

Plaintiff seeks damages under two theories: breach of contract and OUTSA. Under OUTSA, damages can be characterized as lost profits or unjust enrichment, either of which must be proved with "reasonable certainty." *Mar Oil. Co. v. Korpan*, 973 F. Supp. 2d 775, 781-82 (N.D. Ohio 2013) (citing *Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment & Manufacturing, Inc.*, 511 F. App'x. 398, 403 (6th Cir. 2013)). In the breach-of-contract context, Ohio courts have made clear that lost profits too must be proved with "reasonable certainty." *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 511 (6th Cir. 2014). Crucially, both the existence *and* the amount of such damages must be proved with "reasonable certainty." *See id.*, quoting *City of Gahanna v. Eastgate Props., Inc.*, 36 Ohio St. 3d 65, 521 N.E.2d 814, 817 (1988) ("[T]he *amount* of

6

the lost profits, as well as their existence, must be demonstrated with reasonable certainty.") *See also, e.g.*, *Bench Billboard Co. v. City of Toledo*, No. 3:07CV2027, 2011 U.S. Dist. LEXIS 3479, at *7 (N.D. Ohio Jan. 13, 2011), citing *Ace Vending Co. v. Davidson*, 8 Ohio App. 3d 328, 329, 457 N.E.2d 341 (Ohio App. Ct. 12th Dist. Madison County 1982) (amount of lost profits damages must be shown "with reasonable certainty", and while this "does not require mathematical precision, . . . profit loss cannot be left to mere conjecture and must be capable of measurement based upon known reliable factors without undue speculation.").

Here, Metron is not seeking damages related to the use of its "trade secrets" in *producing* any product;[2] it simply asserts that the Cook-Entox patent application permitted using the label of "patent-pending" or "proprietary" to market and distribute the product Clean Slate. Thus, to establish that Plaintiff suffered lost profits or any unjust enrichment due to Clean Slate being sold with the label of "patent-pending" or "proprietary," Plaintiff must show the effect *and* amount of that label's effect on sales to a "reasonable certainty."

Here, the testimony Dr. Grayson intends to provide is not helpful to the jury, because his opinion merely asserts that *some* amount of damages were caused, while offering zero information on any amount (or even any range) for such damages. Dr. Grayson's report stated that the labels of "proprietary" or "patent-pending" when assigned to Clean Slate would likely increase consumer confidence in the product to some extent. (*See* Doc. No. 197-2, Grayson Report, *passim* (PageID 7585-91).) But Dr. Grayson's report did not quantify or indicate the extent of any additional sales or market

---

[2] Nor could it. It is undisputed that the information entered the public domain in April of 2016, years before any of the manufacturing and production related to Clean Slate.

7

share that could be expected to result from such a label. Moreover, in his deposition, he stated that he could not quantify the effect beyond stating it would be "significant" and "positive." (Doc. No. 197-1, Grayson Dep. at 46:1-11 (PageID 7564).) Thus, Dr. Grayson's opinions lack sufficient information to actually be helpful for the jury; even if a jury believed his opinion that *some* lost profits or unjust enrichment resulted from the "patent-pending" label, they would be left with no option but to simply *speculate* as to the amount—far from being able to make a determination to a "reasonable certainty." This is woefully short of what Ohio law requires for the proof of such damages.

While Plaintiff's other expert, Mr. Cowhey, has put together an accounting of the cash flows to various Defendants and other entities from sales of Clean Slate, there is nothing in the record from which a jury could conclude what fraction of this revenue is attributable to the designation "patent-pending" or "proprietary," as opposed to the various other marketing that Root and Defendants have performed. Dr. Grayson's testimony thus offers *no* means to quantify any sales or profit benefit that may have resulted from these labels—necessarily calling for jury speculation as to the amount of any alleged damages resulting from the "patent-pending" or "proprietary" designation. This testimony will not be of assistance to the jury in deciding the facts and issues, would instead call for speculation, and should therefore be prohibited.

Furthermore, even if the Court *were* to accept that Dr. Grayson's testimony about the benefit of "proprietary" or "patent-pending" language could aid a jury, in the absence of any meaningful number that can be assigned to this benefit, the testimony's tendency to cause prejudice far outweighs any potential value. Left with evidence that the "patent-pending" label may have caused *some* additional Clean Slate sales but with no way to even estimate *any* amount, the jury would be sent on a guessing game to surmise whether the

8

magnitude of the impact is almost 0%, almost 100%, or anything in between. This the Court should not permit, particularly where "the principal purpose of the 'reasonable certainty' rule is to prevent the jury from speculating about future damages." *Hill v. Diebold*, 886 F. Supp. 634, 634 (S.D. Ohio 1995), quoting *Johnson v. English,* 5 Ohio App. 2d 109, 214 N.E.2d 254, 260 (Ohio Ct. App., 10th Dist., Franklin County 1966).

In sum, the Court should prevent Dr. Grayson's testimony. His opinions about damages will not assist the trier of fact. Moreover, even if the Court believes that they could, the potential prejudice from allowing in that testimony substantially outweighs its benefit, calling for mere speculation on damages.

### 4. Conclusion.

For all the foregoing reasons, Christina Rahm Cook respectfully asks this Court to preclude presentation of evidence at trial regarding (1) the individual Defendants' romantic relationships; (2) other unrelated litigation in which Cook is or has been a party, including details of any settlements reached in such litigation; and (3) the opinions of Dr. Kent Grayson.

Respectfully submitted,

/s/ Andrew S. Peterson
Andrew S. Peterson (No. 97028)
THE ALBERT LAW FIRM
29425 Chagrin Blvd. #216
Pepper Pike, Ohio 44122
(216) 360-0800
apeterson@salbertlaw.com
*One of counsel for Defendant Christina Rahm Cook*

## CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned and attorney Nick Holland, both counsel for Defendant Cook, conferred with attorneys Dan Leister and Ryan Rubin, counsel for Plaintiff Metron Nutraceuticals, LLC, on November 19, 2024, by telephone. During the call, counsel for Cook identified the topics of the above consolidated motions *in limine*. After discussion, counsel for Plaintiff indicated that they would not agree to any of these topics. The inability of the Parties to agree on the above topics necessitated the filing of the instant motion.

/s/ Andrew S. Peterson
*One of counsel for Defendant Christina Rahm Cook*

## CERTIFICATE OF SERVICE

This is to certify that this document is being sent to all counsel of record on November 20, 2024, via the Court's ECF system and by email.

/s/ Andrew S. Peterson
*One of counsel for Defendant Christina Rahm Cook*