IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| METRON NUTRACEUTICALS, LLC,<br><br> Plaintiff,<br><br>v.<br><br>CHRISTINA RAHM COOK, et al.,<br><br> Defendants. | CASE NO. 1:20-cv-01803<br><br>JUDGE PHILIP CALABRESE<br><br>**DEFENDANTS MARK ADAMS, TOP PARTNERS MANAGEMENT, LLC, AND ENTOX SOLUTIONS, LLC OMNIBUS OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE** |

Defendants Mark Adams, Top Partners Management, LLC, and EnTox Solutions, LLC ("Adams Defendants"), through counsel, oppose Plaintiff Metron Nutraceuticals, LLC's ("Metron") Motions in Limine. Metron filed two motions in limine, both of which seek to exclude relevant evidence at trial that is not substantially outweighed by any unfair prejudice, confusion of the issues, misleading of the jury, or undue delay. For these reasons and those more fully set forth below, the Adams Defendants respectfully request that the Court deny Metron's Motions in Limine.

 **I.** **References to and testimony regarding the circumstances leading to the Metron-LHS litigation is relevant to defenses to Metron's claim for misappropriation of trade secrets and should not be excluded.**

In its second Motion in Limine, Metron seeks to exclude evidence of and references to the litigation between it, Dr. Tsirikos-Karapanos ("Dr. TK"), and LifeHealth Science, LLC ("LHS") ("Metron-LHS Litigation"). In addition, it seeks to exclude testimony from LHS Chairman, Bert Moyar, and LHS CEO, Kent Adams regarding the Litigation. The Adams Defendants oppose this Motion to the extent it seeks to exclude references to or testimony regarding the facts and circumstances that gave rise to the Metron-LHS Litigation. That evidence and testimony are relevant to the Adams Defendants' defenses to Metron's claim for

misappropriation of trade secrets and cannot be easily separated from the fact that litigation ensued.

In order to prevail on its misappropriation claim in this case, Metron must prove that the Adams Defendants acquired "through improper means" Metron's trade secret information that was not "generally known to, and not … readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." R.C. 1333.61(D). There are six factors to determine whether something is a "trade secret":

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business; (3) the precautions taken by the holder of the trade secret to guard the secrecy of that information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take others to acquire and duplicate the information.

*Kendall Holdings, Ltd. v. Eden Cryogenics, LLC,* 521 F. Appx. 453, 456 (6th Cir. 2013).

Metron claims that the trade secrets the Adams Defendants misappropriated are contained in Metron's October 2014 and December 2014 Patent Applications ("2014 Patent Applications"). (ECF 156-1, PageID 4980-4983; *see also* ECF 96, PageID 2829-2854, Notice of IP at Issue.) Dr. TK has testified in this case that the alleged proprietary process contained in the 2014 Patent Applications was created by Dr. TK while he worked for his former employer, LHS. (ECF 156-1, PageID 4896-4902.) In October 2013, LHS hired Dr. TK to revise its formulas and solve production problems with LHS's clinoptilolite-based supplements. (*Id.*, PageID 4874.) While there, Dr. TK "had the idea to create the water-soluble zeolite" and "tried doing some experiments [himself]." (*Id.*, PageID 4889-4891.) He conducted those experiments using LHS's facility and equipment. (*Id.*, PageID 5022-5023.)

After conducting several experiments at LHS, Dr. TK believed he had developed a process for creating water-soluble hydrolyzed zeolite clinoptilolite fragments and pitched his idea to Bert Moyar, LHS's owner. (*Id.*, PageID 5025.) Moyar was interested in selling it to a multi-level marketing company. (*Id.*, PageID 5025-29.) Defendant Clayton Thomas, who was then a salesperson for LHS, suggested a company called Jeunesse Global as an option. (*Id.*, PageID 5026, 5031.) In August 2014, Moyar, Thomas, and Dr. TK met with representatives of Jeunesse Global, which expressed interest in the process. (*Id.*, PageID 5030-31, 5038.) Ultimately, the plans with Jeunesse Global fell through, and Thomas and Dr. TK formed their own entity—Metron—on October 9, 2014. (*Id.*, PageID 5034-35, 5037-38; *see also* ECF No. 154-2, PageID 3495.)

On that same day, Metron filed a provisional patent application (No. 62/031,898) with the United States Patent and Trademark Office. (ECF No. 156-1, PageID 4896-4897. 5301-5311.) The application described the process that Dr. TK developed while at LHS. (*Id.*, PageID 4896-97.) On December 31, 2014, Metron filed an international patent application (No. US2014/072923) that embodied the same process. (*Id.*, PageID 4932-33.) These patents contain the alleged trade secrets that Metron claims the Adams Defendants misappropriated in this action.

As Metron discusses in its Motion, Dr. TK filed suit against LHS seeking declaratory judgment that LHS had no right to the trade secrets contained in the 2014 Patent Applications. (ECF No. 199, PageID 7604.) On October 27, 2014, LHS sued Dr. TK, Metron, and Thomas alleging that they misappropriated LHS trade secrets—the formulas Dr. TK worked on at LHS. (*Id.*; *see also* ECF 157-1, PageID 5985-6000.) The facts and circumstances giving rise to these lawsuits is relevant to the core of Metron's claim for misappropriation of trade secrets—whether

3

it has a proprietary interest in a protectable trade secret that was not known to others. Fed. R. Evid. 401. Specifically, the fact that the process contained in the 2014 Patent Applications was developed at LHS with LHS equipment, was shared with individuals at LHS (such as Bert Moyar) and outside of LHS (such as with Jeunesse Global), and that Dr. TK then took that process, started Metron, and filed the 2014 Patent Applications on behalf of Metron (one day after he left LHS), are all directly relevant to whether Metron has a proprietary interest in a protectable trade secret.

In addition, the facts and circumstances that gave rise to the Metron-LHS Litigation will be difficult to separate from the fact that the litigation itself existed. Bert Moyar and LHS CEO, Kent Adams, should be able to testify about these circumstances and the reasons why LHS sued Metron and Dr. TK. Setting aside ownership of the process contained in the 2014 Patent Applications, testimony regarding when, how, and where the process was created and who had knowledge of it goes to the heart of whether it was known to others and thus, whether it is a protectable trade secret. Indeed, Metron admits that there is at least "slight probative value" of testimony regarding the LHS litigation. (ECF No. 199, PageID 7604.). Yet, it makes a conclusory argument that any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time. The futility of that argument is evidenced by the fact that Metron provides no explanation as to how such evidence would prejudice it.

The fact that such evidence might be damaging to the merits of Metron's misappropriation claim does not create a danger of unfair prejudice. *See George H. Rudy Funeral Home, Inc. v. Westfield Nat'l Ins. Co.*, No. 2:22-CV-11855, 2024 WL 2806467, *3 (E.D. Mich. May 31, 2024) ("Evidence is not excluded as unfairly prejudicial merely because it

4

is damaging to the party against whom it is offered." (internal citation omitted)); *see also United States v. Higgins*, 526 F.Supp.3d 311, 322 (S.D.Ohio, 2021) ("Evidence is not unfairly prejudicial merely because it has an adverse effect … ; unfair prejudice occurs only when 'the jury responds negatively to some aspect of the evidence unrelated to its tendency to make the contested fact more or less probable.'" (internal citation omitted)).

For these reasons, Plaintiff's Motion in Limine No. 2 to exclude any evidence, argument, or reference to prior litigation between Metron, Dr. TK, and LHS, and testimony from Bert Moyer and Kent Adams should be denied.

## II. Plaintiff's Motion in Limine No. 1 to exclude unrelated prior litigation should be denied because it is vague and overbroad.

In seeking to exclude "any evidence, argument, or reference to any prior litigation between Metron and any individuals and entities who/that (1) are not defendants in this lawsuit and (2) are not associated or affiliated with any defendant in this lawsuit," Metron fails to identify any specific litigation. It does not even include the Metron-LHS litigation described in Metron's Motion in Limine No. 2, which would presumably fall within the exclusion this Motion seeks. Without any further description or identification of a specific litigation Metron seeks to exclude, the Adams Defendants are not able to assess whether any such evidence, argument, or reference may be relevant to their defenses or Plaintiff's claims or otherwise meaningfully respond. Metron's Motion should be denied for this reason alone.

In addition, this Motion should be denied to the extent it seeks to exclude relevant evidence. While not specifically mentioning it, this Motion also presumably seeks to exclude the Metron-LHS litigation. For the reasons discussed above, that litigation and the circumstances that gave rise to it are relevant to Plaintiff's claim for misappropriation of trade secrets. In other words, such evidence has a tendency to make facts of consequence regarding that claim more or

5

less probable. Accordingly, it would not result in trials within trials as Metron incorrectly asserts. Instead, it would aid the triers of fact in assessing the very claims at issue. And while Metron argues that the Adams Defendants should not be able to label Metron "litigious," that is not what its Motion seeks to exclude. Rather, it improperly seeks a blanket exclusion of evidence and testimony relating to prior litigation without specifically identifying any prior litigation or providing any explanation as to why any prior litigation involving Metron and non-parties to this litigation is irrelevant and/or prejudicial.

For these reasons, Plaintiff's Motion in Limine No. 1 should be denied as well.

WHEREFORE, the Adams Defendants respectfully request that this Court deny each of Plaintiff's Motions in Limine.

Respectfully submitted,

s/ *Courtenay Y. Jalics*
Courtenay Y. Jalics (0077507)
Christine M. Snyder (0086788)
Ariana E. Bernard (0100001)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel:      216.592.5000
E-mail:   courtenay.jalics@tuckerellis.com
          christine.snyder@tuckerellis.com
          ariana.bernard@tuckerellis.com
*Attorneys for Defendants Mark Adams and TOP Partners Management, LLC*

s/ *William H. Falin*
William H. Falin (0038839)
BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC
1375 East 9th Street, Suite 1700
Cleveland, OH 44114
Tel:      216.621.5300
Fax:      216.621.5440
E-mail:   wfalin@bdblaw.com
*Attorneys for Defendant EnTox Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, a copy of the foregoing **Defendants Mark Adams, Top Partners Management, LLC, and EnTox Solutions, LLC Omnibus Opposition to Plaintiff's Motions In Limine** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        */s/ Courtenay Y. Jalics*
        Courtenay Y. Jalics (0077507)

        *Attorneys for Defendants Mark Adams and*
        *TOP Partners Management, LLC*