**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| METRON NUTRACEUTICALS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTINA RAHM COOK, et al., <br><br> Defendants. | CASE NO.: 1:20-cv-01803 <br><br> JUDGE J. PHILLIP CALABRESE <br><br> **PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE** |

Now comes Plaintiff Metron Nutraceuticals, LLC ("***Metron***") and opposes the motions in limine by defendants in this action, including Motion in Limine to exclude certain evidence by Defendant Christina Rahm Cook ("***Cook***") (ECF 198), Motion in Limine to preclude the introduction of certain evidence by Defendant Clayton Thomas ("***Thomas***") (ECF 201), and Omnibus Motion in Limine to Preclude Evidence at trial filed by Defendants Mark E. Adams; Top Partners Management, LLC; and Entox Solutions, LLC ("***Adams***") (ECF 202) as follows:

**A.    Cook's Motions in Limine** (ECF 198)

**1.    Romantic Relationship of Thomas and Cook.**

Cook seeks an order excluding any evidence regarding the romantic relationship between Cook and Thomas under Fed. R. Evid. 402 and 403. Cook and Thomas's relationship and purported "marriage" is relevant to many issues in this case, including bias, credibility, and relevant foundational background information. Thomas introduced Cook to Metron *as* Thomas's romantic partner. In this lawsuit, Cook admitted that "Clayton Thomas and I had a wedding ceremony in Mexico on May 25, 2019. We have not obtained a marriage license or certificate of marriage in any jurisdiction." (ECF 161-1, PageID 6594). Thomas has testified, in court and under oath, that Cook is his wife. (*See* ECF 163-2, PageID 6789). In this very case, Cook cited Thomas's

and Cook's romantic involvement, and Metron's knowledge of Thomas's and Cook's romantic involvement, to argue that Metron's trade secret claim is time-barred. (ECF 159-1, PageID 6475). Countless videos and content have Thomas calling Cook his "wife." This Court mentioned Cook and Thomas's romantic relationship in its order granting summary judgment in favor of Cook. (ECF 171, PageID 7261). To date, Cook's counsel has not represented that Cook intends to dismiss the affirmative defense that Metron's claims are time-barred. Instead, Cook seeks to exclude evidence of romantic involvement—the very evidence that Cook relied upon to obtain summary judgment on this case and was discussed on appeal before the Sixth Circuit.

It would be impossible to conceal from the jury that Cook and Thomas are romantically involved and/or "married," considering the number of times Thomas and/or Cook has represented in the marketplace and in court that they are "married." Cook and Thomas's relationship is also relevant to bias and credibility. Representing Cook and Thomas to the jury as mere arms-length business associates, and hiding their near 10-year romantic relationship—which both Thomas and Cook consider a "marriage," would deprive the jury of critical information needed to consider facts and credibility.

    **2.    Separate Litigation involving Cook.**

Cook seeks a preliminary order precluding evidence of Cook's involvement in "other litigation." (ECF 198, PageID 7594). Metron agrees that this trial should be limited to this controversy and that introducing other litigation risks introducing a trial-within-a-trial. However, Metron objects to the exclusion of the lawsuit that Cook—represented by Kline Preston (Thomas's current counsel in this case)—filed against Root Wellness, LLC ("***Cook v. Root***"). Kline Preston filed *Cook v. Root* on behalf of Cook and then proceeded to represent Root Wellness, LLC in this lawsuit and now represents Thomas—Root Wellness's sole owner. *Cook v. Root* was quickly

dismissed without any discovery or even litigation. Cook entered into a "agreement" that contained several representations, including that Cook was owed $20,000 a month starting on December 1, 2020 and that Cook had provided $1.27 million "for past work contracts and loans." (ECF 156-2, PageID 5564). Under the agreement in *Cook v. Root*, Cook was to receive $9,000 a month for "leasing" her personal home—where Thomas and Cook both reside—at 232 Governor Way. (ECF 156-2, PageID 5570-71). Cook was also to receive $110,000 "for past royalties" at the end of March 2021. (ECF 154-2).

The *Cook v. Root* lawsuit is clearly relevant to credibility, benefits Cook has received in relationship to CleanSlate, and Cook's relationship with Root Wellness. Based upon the "agreement" in *Cook v. Root*, Cook was/is receiving royalties, lease payments, car allowances, a $1 million-plus valuation for prior "contact work," and other forms of renumeration. Yet, to date, Cook has failed to produce any tax documents evidencing the income she has received from Root Wellness, LLC (or any other entity) in relation to the sale of CleanSlate or "royalties."

As such, introduction of the *Cook v. Root* lawsuit is needed to lay foundation for the "agreement" reached in *Cook v. Root*—which is clearly relevant and admissible.

As to "other litigation" in which Cook was a party, Metron—at this time—does not anticipate needing to introduce evidence of other litigation involving Cook. However, Metron cannot anticipate how Cook and Thomas will testify at trial, and undersigned counsel finds Cook and Thomas to be "moving targets" with respect to their factual representations. As such, Metron should be permitted to present evidence of other litigation for impeachment purposes based upon Cook and Thomas's trial testimony.

### 3. Kent Grayson

Cook seeks a preliminary order precluding the expert testimony of Kent Grayson, Ph.D. under Fed. R. Evid. 702(a). (ECF 198, PageID 7597). Dr. Grayson is a tenured professor at the Kellogg School of Management in Evanston, Illinois. (ECF 197-2, PageID 7585). Dr. Grayson earned his Ph.D. in Marketing at Northwestern University. (ECF 197-2, PageID 7585). Dr. Grayson is an expert in marketing principles and authored many publications on generating trust in the marketplace. (ECF 197-2, PageID 7585).

One purpose of Kent Grayson's opinions is to dispel the "no harm, no foul" argument that Defendants have advanced and will continue to advance at trial. Metron anticipates that, at trial, Defendants will argue that the Cook-Entox Application and subsequent Cook-EnTox Patent afforded them no benefit or advantage in the sale or marketing of Vitality Detox Drops or CleanSlate. Dr. Grayson opined, and will testify, that all materials advertising CleanSlate included "patent pending" and/or "patented" for a reason: it builds trust among consumers and enhances institutional legitimacy. (ECF 197-2, PageID 7586). In this case, it is undeniable that Thomas and Cook used the Cook-EnTox Application and Cook-EnTox Patent to prop up Cook as a "scientist" and promote CleanSlate. Notably, Defendants have produced no expert to rebut Dr. Grayson.

Cook's motion argues that Dr. Grayson cannot testify at trial because he did not provide a mathematically certain percentage of benefit that Defendants received from the misappropriation. The law does not require the level of mathematical certainty that Cook demands.

A "reasonable royalty" is one method the jury in this case can use to award damages for trade secret misappropriation. *Mid-Michigan Computer Sys. v. Marc Glassman, Inc.*, 416 F.3d 505, 510-511 (6th Cir. 2005), citing O.R.C. 1333.63(A). As the Sixth Circuit explained, "Damages in a trade secrets cases are difficult to calculate, because the offending company **has mixed the**

4

**profits and savings from increased quality and quantity of products**, as well as savings from reduced research and production, **with its own natural profits**." *Id*. at 510. For this reason, jurors can award a damages award representing a reasonable royalty. *Id.* A reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff. *Id*. at 511 (upholding a jury's $2 million verdict for reasonable royalty and a $5 million punitive damages award).

Dr. Grayson's testimony is also relevant and admissible as to whether the misappropriation was "willful and malicious." The motivation and malicious intent behind copying 72 specific aspects of Metron's unpublished patent application is solidified by the repeated use of "patent-pending" and "patented" to promote CleanSlate, in direct competition to Metron's products and the products of Metron's distributors. The advantage gained from using these marketing terms to sell CleanSlate (Root's flagship products) and advancing Cook as the "inventor" or CleanSlate and the "scientist behind Root" is precisely relevant to the factual issues that the jury must decide, including whether Defendants are committed a premediated, planned, willful and malicious misappropriation of Metron's trade secrets.

For these reasons, Cook's motion should be denied.

    **B.**    **Thomas's Motion in Limine** (ECF 201).

Thomas seeks to exclude evidence or reference to "any other actions" involving Thomas, specifically a publicly available civil enforcement action the United States Securities and Exchange Commission initiated against Thomas in the United States District Court, Middle District of Tennessee, Case No. 3:23-cv-00459 ("***SEC v. Thomas***"). On May 9, 2023, the SEC initiated a civil enforcement action against Thomas alleging Thomas "fraudulently raised $730,000 from one investor through the sale of seventeen promissory notes" and "misappropriated investor

5

funds for his personal use…" (Case No. 3:23-cv-00459, ECF 1, Page ID 1-2, Complaint at ¶ 1, 6). Thomas agreed that "the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act." (Case No. 3:23-cv-00459, ECF 7-1, Page ID 34). The court ordered, adjudicated, and decreed that Thomas "is liable for disgorgement of $519,000, representing ***net profits gained as a result of the conduct alleged in the Complaint***…" (Case No. 3:23-cv-00459, ECF 20, Page ID 126) (emphasis added). Thomas seeks to exclude his consent judgment, judicial findings, and order of disgorgement in *SEC v. Thomas* under Fed. R. Evid. 402 and 403.

Thomas's past acts of dishonesty—including the fraud, misappropriation, and court ordered disgorgement—are relevant under Fed. R. Evid. 608. Rule 608(a) of the Federal Rules of Evidence allows witnesses to be cross-examined on specific instances of conduct if they "are probative of the character for truthfulness or untruthfulness." "Whether a witness had previously committed fraud is probative of that witness's character for truthfulness." *Cephas-Hill v. Linden Med. Center/Mid-Ohio Fam. Prac. Assocs.*, 2023 U.S. Dist. LEXIS 242495, *5, Judge Watson (S.D. Ohio, 2023) (allowing the cross-examination of witnesses about fraudulent billing practices and wrongful tax practice under Fed. R. Evid. 608 and 613). In *SEC v. Thomas*, Thomas agreed to a disgorgement order representing net profits gained as a result of the conduct alleged in the Complaint, which the Court determined was $519,000 (Case No. 3:23-cv-00459, ECF 20, Page ID 126). Such evidence is relevant to Thomas's credibility.

As to "any other litigation" that Thomas seeks to exclude, Metron generally agrees that a "trial-within-a-trial" should be avoided. However, certain prior litigation is relevant to the issues in this case, specifically the prior lawsuit between Metron and Thomas filed in state court on February 22, 2016, Case No. 16 859345 ("***Metron v. Thomas***"). When moving for summary

6

judgment, Thomas filed the Complaint in *Metron v. Thomas* (ECF 157-5, PageID 6163). Now, Thomas argues that "all past litigation" including *Metron v. Thomas* is inadmissible. Thomas's counsel has not indicated that Thomas is dismissing and does not intend to pursue any statute of limitations defense at trial. Therefore, *Metron v. Thomas* is relevant to Thomas's own affirmative defense. *Metron v. Thomas* also provides needed background regarding the historical relationship between Metron and Thomas and the circumstances in which Thomas was removed from the company.

Metron reiterates that Metron cannot anticipate or reasonably predict what version of events Thomas may present at trial. A preliminary order excluding all other litigation involving Thomas, which might include Thomas's statements and testimony made in other litigation, is improper as such evidence may be needed for impeachment under Fed. R. Evid. 613. As such, Metron should be permitted to present evidence of other litigation for impeachment purposes based upon Thomas's trial testimony.

  **C.**  **Adams' Motion in Limine** (ECF 202)

    **1.**  **Adams's Other Businesses.**

Adams seeks a preliminary order excluding any reference, argument, testimony, or evidence regarding Adams's other business that are not parties to this action, with the exception of Sozo Global, Inc.

Rule 401 provides that evidence is relevant if:

(a)  It has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)  The fact is of consequence in determining the action.

Rule 403 provides:

7

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Adams's motion should be denied as an order granting this motion could be misused to prevent the jury from obtaining important and useful background about Adams or prevent the jury from understanding the extent of Adams's business experience and acumen. Evidence that Adams is an accomplished, experienced, and sophisticated businessperson, as evidenced by operating numerous entities and companies, is relevant and admissible.

Additionally, several of Adams' other businesses are relevant, specifically **Renew Global, Inc**. and **Renew Interests, LLC.** On April 11, 2016, Metron and SOZO entered into an agreement allowing Renew Global, Inc. to market and distribute Metron's product under the Sozo-Metron EDA. (ECF 157-4, PageID 6146). In discovery, Metron learned that EnTox Solutions, LLC entered into a licensing agreement with **Youngevity International, Inc**., in which EnTox Solutions, LLC ("***EnTox***") identified itself as an "affiliate" of Renew Interests, LLC. During that same time frame, Youngevity acquired the assets of Renew Interests, LLC, which purportedly included SOZO Global and also purportedly included the ability to license EnTox's intellectual property, including the Cook-EnTox Patent. (ECF 155-2, PageID 4167-68). Adams "foreclosed on Sozo's assets and moved them to a new entity, called Renew Interests, LLC…this included the Metron product that Sozo had received from its first purchase order. (ECF 159-1, PageID 6449). Adams further represented that Metron's product was "consigned to Youngevity." (ECF 159-1, PageID 6454). Adams represented that Youngevity sold $2,000 to $3,000 worth of Metron's product (named "Renew HC" at the time). (ECF 159-1, PageID 6455).

The jury should not be prevented from learning that EnTox, a company Adams alleges was formed solely for the Cook-EnTox Application, was affiliated with Renew Interests—a company

8

*named after* Metron's product at the time (Renew HC). Excluding reference to these entities improperly and unnecessarily limits the jury's access to relevant and helpful information and evidence.

### 2. Undisclosed Damages Evidence.

Adams argues that Metron has failed to produce any evidence or expert opinion to support that Metron is entitled to damages against Adams. Adams' Motion in Limine No. 2 is nothing more than a third "bite at the apple" to argue that Metron has no cognizable claims against Adams. Twice before, Adams has argued that Metron is not entitled to and cannot prove damages against Adams: first, when Adams moved for summary judgment and, again, on appeal, when the Sixth Circuit applied a *de novo* review as to whether genuine issue facts exist as to Metron's claims against Adams. Because the Sixth Circuit applied a *de novo* standard of review, the Sixth Circuit considered all of Adams' arguments in support of summary judgment, including the same argument that Adams is making in Motion in Limine No. 2: Metron cannot establish damages against Adams. The Sixth Circuit unanimously decided that genuine issues of fact exist as to Metron's claims against Adams. Adams's Motion in Limine No. 2 is, indeed, a third bite at the apple.

Regardless, the creation of the Cook-EnTox Application and Adams' prosecution of the Cook-EnTox Application into the Cook-EnTox Patent had damaged and continues to damage Metron—as will be proven at trial. Metron has already presented evidence that Metron incurred more than $30,000 in damages as a direct result of Adams's prosecution of the Cook-EnTox Application and Cook-EnTox Patent and that Merton's damages are ongoing. (ECF 165-2, PageID 7061). Adams' argument that Metron cannot prove the damage element of its claims against Adams is incorrect and has already been resolved.

9

### 3. Use of the Term "Defendants"

Adams's Motion in Limine No. 3 seeks to control the vocabulary of Metron, Metron's witnesses, and Metron's counsel. Specifically, Adams seeks an order preventing anybody from saying "Defendants" during trial because, according to Adams, the use of the plural noun "Defendants" implies that each defendant is *not* entitled to separate consideration.

The use of the word "Defendants" is not prejudicial in any way. This is an imagined, non-existent risk. Many situations will arise at trial when attorneys, witnesses, and even the Court may wish to refer to collectively to "defendants." To require all parties, witnesses, and the court to list out the names of all defendants, every time all defendants are referred to collectively, is unworkable and unnecessary. The jury will be properly instructed on the law and that each defendant, in a multi-defendant trial, is entitled to separate consideration and defense.

### 4. Patent infringement, conspiracy, and dismissed claims.

Adams seeks a preliminary order to preclude argument that Adams is liable for torts that are not pending. Metron has no intention to argue that Adams is liable for torts not pending or dismissed. Metron did not plead a patent infringement claim in this lawsuit.

However, Adams's Motion in Limine No. 4 improperly conflates that word "conspire" with the common law tort of civil conspiracy. The evidence is clear that Thomas, Cook, and Adams—with premeditation and prior correspondence—got together to form the Cook-EnTox Application. Indeed, Thomas, Cook, and Adams conspired to create the Cook-EnTox Application—which Metron alleges constituted a misappropriation of Metron's trade secrets. Metron need not plead and prove the tort of civil conspiracy[1] to accurately tell the jury that Thomas, Cook, and Adams

---

[1] To establish a civil conspiracy claim, a plaintiff must prove: (1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an (footnote continued)

10

"conspired." Again, Adams's Motion in Limine No. 4 is an improper attempt to limit Metron and Metron's vocabulary.

Adams also fundamentally misunderstands the testimony of Dr. Fernando Alberdi. Dr. Alberdi is an intellectual property expert that Metron retained to explain the patent process and establish that filed patent applications retain trade secret status until the date of publication. Throughout this litigation, Defendants have argued that decisions from the USPTO and the USPTO's issuance of the Cook-EnTox Patent somehow provides them a defense to Metron's claims in this case. Based upon Defendant's misrepresentation of the law and the nature of the patent process, Dr. Alberdi is necessary to explain to the jury the USPTO determinations and their impact—or lack thereof—on this litigation. Dr. Alberdi will also explain how Adams and his attorneys used, cited, and relied upon the portions verbatim lifted from Metron's Application to satisfy the "enablement" requirement for the Cook-EnTox Patent. "But for" the blatant copying, Adams could not establish "enablement"—and therefore, the USPTO would not have issued the Cook-EnTox Patent.

Testimony dispelling Defendants' false narratives about the patent process and the effect of the USTPO's decisions on Metron's claims in this case does not equate to presenting to the jury a patent infringement case as Adams suggests.

Adams's Motion in Limine No. 4 should, therefore, be denied.

---

unlawful act independent from the conspiracy itself. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464 (1998).

11

Respectfully Submitted,

`

*/s/ Daniel A. Leister*
Ryan K. Rubin (0077367)
Daniel A. Leister (0089612)
LEWIS BRISBOIS BISGAARD & SMITH LLP
1375 E. 9th Street, Suite 2250
Cleveland, Ohio 44114
Tel. 216.344.9422 / Fax 216.344.9421
Ryan.Rubin@lewisbrisbois.com
Dan.Leister@lewisbrisbois.com
*Counsel for Plaintiff, Metron Nutraceuticals, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on **December 5, 2024**, a true and correct copy of the foregoing has been electronically filed using the CM/ECF System, and that notice of this filing will be sent to all of the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Andrew S. Peterson
Nicholas J.M. Holland
Steven W. Albert
THE ALBERT LAW FIRM
apeterson@salbertlaw.com
salbert@salbertlaw.com
*Counsel for Defendants Christina Rahm Cook aka Christina Rahm, Dr. Christina Rahm, LLC , Dr. Christina Rahm Ventures Incorporated, Cure The Causes, Inc., Merci Dupre LLC*

G. Kline Preston, IV
Kline Preston Law Group
kpreston@klineprestonlaw.com
*Counsel for Defendant Clayton Thomas*

William H. Falin
Buckingham, Doolittle and Burroughs
wfalin@bdblaw.com
*Counsel for Defendant EnTox Solutions LLC*

Courtenay Youngblood Jalics
Christine M. Snyder
Ariana E. Bernard
Tucker Ellis LLP
courtenay.jalics@tuckerellis.com
christine.snyder@tuckerellis.com
ariana.bernard@tuckerellis.com
*Counsel for Defendants Mark E. Adams and Top Partners Management, LLC*

                                           *s/ Daniel A. Leister*
                                           Daniel A. Leister (0089612)
                                           LEWIS BRISBOIS BISGAARD & SMITH LLP
                                           *Counsel for Plaintiff, Metron Nutraceuticals, LLC*